# CASES

IN THE

# SUPERIOR COURT

OF

# PENNSYLVANIA.

The Benevolent Order of Active Workers, Appellant,
to the Use of E. H. Binns, Assignee for Benefit of
Creditors, v. John S. Smith.

*Principal and agent—Duties of collecting agent—Beneficial insurance
company.*

Where an officer of a beneficial association authorized to collect taxes
and dues receives money, due the corporation, he is bound to hold it and
pay it to the treasurer. Payment to him is payment to the company.
Such an agent cannot take it upon himself to return the money because he
fears that his principal may not be able to perform the contract whereon
the money was received.

Argued Nov. 11, 1895. Appeal No. 22, Nov. T., 1895, by
plaintiff, from the judgment of C. P. No. 3; Phila. Co., June T..
1891, No. 644. Before RICE, P. J., WILLARD, BEAVER,
REEDER, WICKHAM, McCARTHY, ORLADY, JJ. Reversed.

Action in assumpsit to recover $65.00, paid to defendant as
secretary of a branch of defendant corporation.
The facts sufficiently appear in the opinion of the court.

*Error assigned* was the charge of the court below, which was
as follows: "In this case you will render a verdict for the

defendant. The moneys which he repaid to the members were properly repaid, and you will render a verdict for defendant."

*Henry Budd,* for appellant.—The defendant was an officer of the corporation; in that capacity he received the money and was bound to hold it. In his hands it was the corporation's money, which it was his duty to turn over to the treasurer: Active Workers v. Sanders, 28 W. N. 321; Garrett v. Trust Co., 29 W. N. 33.

*A. E. Stockwell,* for appellee.

OPINION BY WICKHAM, J., November 18, 1895:

On April 28, 1891, The Benevolent Order of Active Workers, an incorporated association engaged in some sort of an insurance business, on the mutual plan, made an assignment for the benefit of its creditors.

John S. Smith, the defendant in the court below, and appellee here, was appointed secretary of a branch of the order, about two weeks before the date of the assignment. As such secretary he was authorized and required to collect initiation fees, dues, etc., from the members and pay the same to the supreme secretary. For his services he was to receive the sum of one dollar out of every initiation fee.

At the time of the assignment his branch contained seventy-eight members. He collected in all five hundred and sixty-six dollars, from which sum he deducted, as was his right, seventy-eight dollars as his full compensation. On the morning of May 28, 1891, there remained in his hands the sum of sixty-three dollars, all whereof belonged to the order. He went to the proper office with this money, intending to pay it over. What occurred there may be best told in his own words, taken from his testimony.

"The 28th was Tuesday, and that was the morning I was to make my return for the week, and I went down to the office to make the return, and met Mr. Fritz."

"Question: Who was he? Answer: At one time president, and at another time supreme manager; but he seemed to have pretty much all to say. He told me he would not receive any returns to-day, as there was trouble, and the presumption was

that there would be an injunction on them, but if he found it was going to go that far he would throw it into the hands of a receiver.

" Question : What did he tell you to do? Answer: He told me to come down to-morrow morning. This was before the appointment of a receiver. I got a note from Mr. Binns the next day to bring my books down.

" Question : What did you do on Tuesday morning when you went to make your return and hand over the money, after your interview with Mr. Fritz ? Answer: I went right home, and from there I hunted up the members for whom I had dues and asked what I should do, and I told them Mr. Fritz said it was possible to put it into the hands of a receiver or assignee, and I said I did not know whether they would hold me responsible for the money or not, and they said if you get into trouble we will hand it back to you; and, under those circumstances, I handed back all the money I had.

" Question : How much money was there ? Answer: I think $28.00—my returns will show that; it was $35.00 for benefit taxes and $28.00 for dues for fourteen members.

" Question : Sixty-three dollars altogether? Answer: Yes, sir."

It will be observed from the testimony above quoted, first, that it does not clearly appear that Fritz, at this time, held any office in the order. Second, that neither Fritz nor any one else directed or suggested the repayment of the money. Third, that the $63.00 consisted entirely of benefit taxes and dues, collected from persons who were members in full standing. No part of the sum represented initiation fees received from persons merely desiring to join the association, and whose contracts therewith might be deemed inchoate and avoidable.

It is quite clear that the members who paid in these taxes and dues could not have recovered them from the sub-secretary, who, by virtue of his office, was also a sub-treasurer of the order. In contemplation of law the payments were made to the order, and were in its treasury. As to the relations existing between the defendant and the order it is equally clear that he held the money as its agent, and it is a familiar and elementary rule of law that an agent will not be permitted to dispute the title of his principal. His agency, it may be added, was to collect and

pay over, not to disburse.   Nor will it do to hold that an agent who has collected moneys for his principal may restore the same merely because he fears that the principal may be unable to perform the contract whereon the moneys were received.

Under the circumstances disclosed by the evidence, it was the defendant's duty to pay the $63.00 to the supreme secretary, or, failing to do this, to turn the funds over to the assignee. Accepting as true everything that the defendant says took place between himself and Fritz, who may or may not have been an officer of the order at the time, the repayment was entirely unauthorized.   If he could lawfully restore the $63.00, which, as has already been shown, he had been paid for collecting, he could, with equal right, have restored the entire $566, if that sum had remained in his possession.

His conduct, while not intentionally dishonest, was, in its effect, a fraud on the other members of the order and its creditors.

In our opinion, the assignee was entitled to recover, and hence the direction of the learned judge of the court below, to find for the defendant, was erroneous.

The specification of error is sustained.

The judgment is reversed and a venire facias de novo awarded.